478 So.2d 542 (1985)
STATE of Louisiana
v.
Gary JUNEGAIN.
No. KA 2833.
Court of Appeal of Louisiana, Fourth Circuit.
October 11, 1985.
Rehearing Denied November 26, 1985.
*544 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Michael E. McMahon, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Richard Whelton, Jr., Student Practitioner, David Girard, Supervising Atty., New Orleans, for defendant-appellant.
Before WILLIAMS, ARMSTRONG, JJ., and PRESTON H. HUFFT, J. Pro Tem.
*545 WILLIAMS, Judge.
Defendant was charged by bill of information for two counts of possession of stolen property valued over five hundred dollars in violation of LSA-R.S. 14:69. After a motion to suppress was denied, Junegain was tried and found guilty by a six member jury. The defendant was determined to be a habitual offender and was sentenced to twenty years at hard labor under LSA-R.S. 15:529.1. On appeal, Junegain urges four assignments of error.

FACTS
Officer Conrad Baker of the New Orleans Police Department, while working as a security officer at Maison-Blanche, Lake Forest Plaza, on July 25, 1983, observed shortly before 9 P.M., the defendant park a gray 1982 Oldsmobile in the moving lane of traffic directly in front of the store's entrance facing I-10. Officer Baker testified that the car's emergency flashers were engaged and that is what drew his attention to the automobile. The driver, the sole occupant of the car, later identified as the defendant, exited the car and entered the store.
Officer Baker testified that he became suspicious at this point due to an incident two weeks earlier when a black man had parked an automobile in the moving traffic lane at the store's entrance, engaged the emergency flashers, entered the store, stole merchandise, and fled to his car without his being apprehended. Officer Baker stated that since the defendant fit the description of the male who had stolen merchandise earlier and he was using a similar pattern as that of the prior thief, he decided to observe the defendant once he entered the store.
The defendant entered the men's clothing department where Officer Baker observed him kneel down behind a counter and attempt to conceal a pair of socks in his pants leg. The defendant replaced the socks once he was aware of Officer Baker's presence.
Officer Baker then approached the defendant and requested that he accompany him to the store's security office. The defendant consented and was escorted to the security office. Once inside the security office, Baker explained to the defendant that he matched the description of a subject who had committed the crime two weeks earlier. Baker requested that the defendant give his name and identification. The defendant stated that his name was "Elijah Scott", but gave Baker a Charity Hospital Card in the name of Joan Simon, which he carried in a brown wallet in his sock. Baker testified that he then conducted a weapon search of Junegain's outer clothing for his own safety. During the course of the pat-down, Baker felt a hard cylindrical object approximately five inches long in the defendant's sock. Believing the object to be a knife, Baker retrieved it and found it to be a tightly-rolled clear plastic bag of marijuana. The defendant was then placed under arrest for possession of marijuana and advised of his Miranda rights.
Officer Baker conducted a full search of the defendant. A search of the defendant's wallet revealed four marijuana cigarettes, two keys to a General Motors vehicle, and Maison-Blanche clothing tags. He was carrying a black vinyl folder which contained an Oldsmobile owner's manual, credit cards issued in the name of John Meisler, and four checks made to the order of Cactus Beverage. John Meisler's telephone number was obtained by Baker through directory assistance. Meisler was not at home, but Baker spoke to his mother who confirmed that her son's 1982 Oldsmobile had been stolen. Baker then sought the assistance of Officer Jerry Cutrer to determine whether the set of keys discovered in defendant's wallet fit the Oldsmobile that the defendant had parked at the store's entrance. In the course of trying the doorlock, Officer Cutrer, discovered, in plain view, seven ladies' jogging suits on Maison-Blanche hangers in the back seat of the car. It was later determined that the code numbers on the clothing tags recovered from the defendant matched those belonging to the jogging suits found in the automobile. At trial, the Oldsmobile was *546 valued at $9,000.00 and the jogging suits valued at $139.93.

ASSIGNMENT OF ERROR NO. 1
Defendant contends that the trial court erred in denying his motion to suppress the evidence because his arrest was not based on probable cause. He alleges that the stop and frisk was improper because the Officer failed to show facts that defendant was armed and dangerous. Since the defendant was arrested on the basis of probable cause, the constitutionality of the stop will not be addressed.
It is well-settled that a search conducted without a warrant issued upon probable cause is per se unreasonable, subject to a few specifically established and well-delineated exceptions. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); State v. Raheem, 464 So.2d 293 (La.1985). One of these exceptions is that an officer may make a search of a person and the area in his immediate control incident to a lawful arrest. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. Morgan, 445 So.2d 50 (La.App.4th Cir. 1984). This exception is based upon practical considerations such as the need of the arresting officer to discover weapons that may threaten his or others safety and to prevent the possible concealment or destruction of evidence. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). The officer may conduct a search incident to an arrest once he has made the arrest and the arrest is based on probable cause. State v. Marks, 337 So.2d 1177 (La.1976). Therefore, in order to determine whether the seizure of evidence from defendant was proper, the court must determine when the defendant was actually arrested and whether the arrest was based on probable cause. State v. Raheem, supra; State v. Tomasetti, 381 So.2d 420.
In Raheem, the Supreme Court stated: "An arrest occurs when the circumstances indicate an intent to effect an extended restraint on the liberty of the accused, rather than at the precise time an officer tells an accused he is under arrest." 464 So.2d at 296, citing Code of Criminal Procedure art. 201; State v. Tomasetti, supra. In the case at bar, Officer Baker's taking the defendant to the security office, his explanation that he fit the description of the person who had committed an earlier theft, and his reaction to the defendant's production of false identification can only lead to the conclusion that the defendant was under arrest at the time of the patdown. This is not altered by Officer Baker's failure to verbally advise the defendant he was under arrest at the time of the pat-down. State v. Marks, supra. Therefore, this Court holds that the defendant was under arrest at the time of the patdown because the circumstances indicate that Officer Baker intended a custodial arrest in connection with the theft two weeks prior.
The defendant contends that his arrest was not based on probable cause because he was never charged with a crime involving the attempted theft of the socks and further, he was charged with criminal trespass when he was lawfully in a public building. Probable cause to arrest without a warrant exists when facts and circumstances known to the arresting officer are sufficient to justify a man of ordinary caution in believing that a person to be arrested has committed a crime. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). Probable cause must be judged by the practical considerations of everyday life on which average men, and particularly average police officers, can be expected to act. State v. Marks, supra; State v. Raheem, supra.
As in this case, Officer Baker observed the defendant park his Oldsmobile in the moving lane of traffic directly in front of the store's entrance and engage his emergency flashers. The defendant fit the description of a man Officer Baker had seen steal merchandise from the store two weeks earlier. Coupled with this description, the defendant appeared to be using the exact method by which the previous *547 crime had been committed. Through Officer Baker's uncontroverted testimony, the defendant was observed attempting to conceal a pair of socks in his pants leg. Upon being noticed, the defendant suddenly replaced the socks and then hastily walked away from Baker. It was the cumulation of these facts, witnessed first-hand by Officer Baker, that led to the defendant's arrest.
The defendant's initial detention was not based on criminal trespass, but rather this was one of many charges later filed by Baker in his report relating to the prior theft. The issue of probable cause is separate from which charges are ultimately brought to trial due to the district attorney's discretion in how he will prosecute. Code of Criminal Procedure Art. 61. Thus, when Officer Baker escorted the defendant to the store's security office, there existed probable cause, based on the facts known to him, that a crime had been committed. Incident to this lawful arrest, he was justified in the pat-down and subsequent full search of the defendant and the area within his immediate control for weapons and for evidence of a crime. State v. Morgan, 445 So.2d 50 (La.App. 4th Cir.1984); Gustafson v. Florida, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Since the search was lawful, evidence seized was rightfully admitted. State v. Morgan, supra.

ASSIGNMENT OF ERROR 2
The defendant now contends that the trial court erred in admitting evidence without a search warrant from the car belonging to Meisler. The state argues that the search was justified under the plain-view exception. A search and seizure conducted without a warrant is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Banks, 363 So.2d 491 (La.1978); State v. Hernandez, 410 So.2d 1381 (La.1982). In order for the warrantless seizure to come under the plain view exception, three conditions must be satisfied: (1) there must be prior justification for an intrusion into a protected area; (2) in the course of which evidence is inadvertently discovered; and (3) where it is immediately apparent without close inspection that the items are evidence or contraband. State v. Parker, 355 So.2d 900 (La. 1978); State v. Banks, supra; State v. Hernandez, supra.
The state has met its burden of proving that the Officer who conducted the search had prior justification. Officer Baker was justified in his search of the defendant. Upon his discovery of the credit cards belonging to Meisler, Officer Baker obtained Meisler's number through directory assistance and determined in his conversation with Meisler's mother that a 1982 gray Oldsmobile Cutlass had been stolen from Meisler. Based on the fact that the defendant had in his possession the automobile owner's manual and a second set of keys, it was in the course of a legitimate investigation of a possible stolen vehicle when Officer Cutrer went to the car to determine if the keys fit the stolen vehicle. During the course of this investigation, Officer Cutrer discovered the jogging suits lying in plain view on the automobile's back seat. The discovery was inadvertent. Further, it was ascertainable without close inspection that the jogging suits were stolen. The jogging suits were still on Maison-Blanche hangers and as it is a store policy to remove the hangers once a sale is made, it was apparent that the jogging suits were more likely than not, stolen. Accordingly, the warrantless search of the defendant's car and the contents seized therein were properly admissible. Defendant's motion to suppress is denied.

ASSIGNMENT OF ERROR NO. 3
Assignment of Error 3 alleges that the court erred in finding the defendant to be a multiple offender under LSA-R.S. 15:529.1 on the basis of plea of guilty-waiver of rights form rather than a recorded transcript of a Boykin colloquy. The defendant pleaded guilty to two counts of possession of stolen property, a violation of *548 LSA-R.S. 14:69, on July 14, 1976, at which time he was sentenced to concurrent terms of three years. The 1976 conviction was introduced by the state in the multiple offender hearing, over defendants objection, to have the defendant adjudicated a second offender.
The record shows that the State introduced the bill of information, the Minute Entry corresponding to Junegain's prior guilty plea, and the guilty plea which contained a waiver of Boykin rights. The defense's objection to the sufficiency of proof submitted by the defense and their request to obtain a transcript of the Boykin colloquy in the earlier guilty plea was denied by the trial court.
A guilty plea is constitutionally valid only if the record evidences a knowing and voluntary waiver of the defendant's constitutional rights; the right to trial by jury, the right of confrontation of one's accusers, and the privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); State v. Bolton, 379 So.2d 722 (La.1979); State v. Lewis, 367 So.2d 1155 (La.1979); State v. Bland, 419 So.2d 1227 (La.1982).
In order to enhance a sentence under the multiple offender statute, the guilty plea must be supported by a contemporaneous record of the Boykin examination which demonstrates a free and voluntary waiver of the defendant's constitutional rights. State v. Lewis, supra.
A "contemporaneous record" is defined to be the minute entry of the guilty plea or a transcript of the Boykin colloquy. State v. Holden, 375 So.2d 1372 (La.1979).
A "plea of guilty form" may also be considered in lieu of the colloquy between the judge and defense in determining whether the defendant was fully informed of his Boykin rights. State v. Dunn, 390 So.2d 525 (La.1980).
In State v. Tucker, 405 So.2d 506 (La. 1981), the Louisiana Supreme Court held:
"that the minute entry concerning the abbreviated colloquy along with the well executed `waiver of rights' form signed by his attorney and the trial judge constitute a sufficient affirmative showing in the record that the defendant knowingly and intelligently waived his constitutional privilege against self-incrimination, rights to trial by jury, and the right to confront his accusers." Tucker, supra at 509.
In the present case, the minutes show that the accused "signed a plea of guilty form in connection with his pleas of guilty and the court questioned the accused under oath regarding his plea of guilty, as noted by the court reporter." The waiver of rights form contained in the defendant's plea of guilty along with a statement that the plea was not the result of force or intimidation. Further, he waived his right to trial by jury, to confrontation, and to the privilege against self-incrimination.
This waiver of rights form which supplements the minute entry, in clear and concise language, adequately demonstrates those rights the defendant waived in entering his guilty plea and stands in stark contrast to the waiver of right form found to be deficient in State v. Age, 417 So.2d 1183 (La.1982).
This form affirmatively shows the defendant waived his right to a jury trial rather than a mere right to trial as found in the Age form. The form advises the defendant he has the privilege against self-incrimination and further advises the defendant that he does not have to take the stand and testify against himself. This conforms with the requirements set forth in State v. Martin, 382 So.2d 933 (La.1980), which requires the defendant be informed "of his right to stand trial without being forced to testify against himself.", a statement that was omitted in the Age form.
We find the waiver of rights contained in the guilty plea which complements the minute entry fully demonstrates the free and knowing waiver by the defendant of his Boykin rights. Accordingly, the trial court was proper and adjudicate the defendant as a multiple offender and the prior guilty plea was properly used against him.

*549 ASSIGNMENT OF ERROR NO. 4
Defendant was found guilty on two counts of possession of stolen property. The court failed to mention which count was being enhanced under the multiple bill. When convictions on multiple counts are entered on the same day, these convictions shall be treated as one conviction when applying LSA-R.S. 15:529.1. State v. Sherer, 411 So.2d 1050 (La.1982); State v. Wells, 454 So.2d 403 (La.App. 4th Cir.1984).
The evidence is sufficient to convict under both counts. The sentencing is in error insofar as the value of the jogging suits was established to be $139.93, not in excess of $500.00 as charged in the bill of information. The maximum sentence for possession of the jogging suits valued at $139.93 is two years. 14:69.B(2). Whereas ten (10) years is the maximum sentence for the possession of the stolen automobile valued at $9,000.00, 14:69.B(1). This case is remanded insofar as to direct the court to resentence on both counts with only one count enhanced under the multiple bill and the specification by the court which count is basis for the enhancement of the defendant's sentence.
For the foregoing reason defendant's conviction is affirmed and is remanded to the court below for sentencing on possession of stolen property valued at over $500.00.
AFFIRMED IN PART, REMANDED IN PART.